**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **UNILOC USA, INC. and** | § | |
| **UNILOC LUXEMBOURG S.A.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMAZON.COM, INC. and** | § | |
| **AMAZON DIGITAL SERVICES, INC.,** | § | **CIVIL ACTION NO. 2:16-CV-00570-RWS** |
| | § | **(LEAD)** |
| **Defendants.** | § | |
| | § | |
| **GOOGLE INC.,** | § | |
| | § | **CIVIL ACTION NO. 2:16-CV-00571-RWS** |
| **Defendant.** | § | |
| | § | |
| **HOME BOX OFFICE, INC.,** | § | |
| | § | **CIVIL ACTION NO. 2:16-CV-00572-RWS** |
| **Defendant.** | § | |
| | § | |
| **HULU LLC,** | § | |
| | § | **CIVIL ACTION NO. 2:16-CV-00573-RWS** |
| **Defendant.** | § | |
| | § | |
| **NETFLIX, INC.,** | § | **CIVIL ACTION NO. 2:16-CV-00574-RWS** |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Netflix Inc.'s Motion to Dismiss (Case No. 2:16-cv-574,

Docket No. 15) and Defendants Amazon.com, Inc. and Amazon Digital Services, Inc.'s

(collectively, "Amazon") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for Lack of

Patentable Subject Matter Under 35 U.S.C. § 101 (Docket No. 20)[1], which is joined by the other

---

[1] All references to "Docket No." are to the docket in lead Case No. 2:16-cv-570 unless specifically stated otherwise.

Defendants in this consolidated action.[2]   Amazon's motion argues that the case should be dismissed because the asserted patent claims ineligible subject matter under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).   Netflix's motion joins Amazon's and further argues that the case should be dismissed because the Complaint pleads insufficient facts to state a claim under Federal Rule of Civil Procedure 8.   The Court **GRANTS** Amazon's motion (Docket No. 20).   Netflix's motion is **GRANTED-IN-PART** to the extent it seeks relief under 35 U.S.C. § 101 and is otherwise **DENIED** as moot.

## BACKGROUND

This is a consolidation of five patent-infringement actions in which Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. (collectively, "Uniloc") assert infringement of U.S. Patent No. 8,566,960 ("the '960 Patent"), entitled "System and Method for Adjustable Licensing of Digital Products."   The Defendants are providers of digital media content, and Plaintiffs generally allege that the Defendants' digital media content distribution systems infringe the '960 Patent.

The '960 Patent relates to "systems and methods to enable the monitoring and adjusting software usage under a software license." '960 Patent, col. 1:18–20.   The '960 Patent explains that a license can be adjustable over time in terms of the number of devices that may access the licensed product.   *Id.* at col. 3:41–42 ("The techniques described herein allow for a changing number of device installations on a per license basis over time.").   It further explains that the adjustment may be desirable to accommodate the natural usage patterns of users, for promotional reasons or to control abusive copying.   *Id.* at col 1:61–2:2, 6:13–20, 6:36–40.

---

[2] All other Defendants have joined Amazon's motion.  *See* Case No. 2:16-cv-571, Docket No. 14 (joining Amazon's motion); Case No. 2:16-cv-572, Docket No. 16 (same); Case No. 2:16-cv-573, Docket No. 14 (same); Case. No. 2:16-cv-574, Docket No. 15 (joining Amazon's motion and providing alterative grounds for dismissal).

The three independent claims of the '960 Patent recite a system (claim 1), a method (claim 22) and a computer program product (claim 25) "for adjusting a license for a digital product over time." *Id.* at col. 11:57–58, 13:32–33. Claim 22 and its dependent claims 23 and 24 provide:

> **22.** A method for adjusting a license for a digital product over time, the license comprising at least one allowed copy count corresponding to a maximum number of devices authorized for use with the digital product, comprising:
>> receiving a request for authorization to use the digital product on a given device;
>> verifying that a license data associated with the digital product is valid based at least in part on a device identity generated by sampling physical parameters of the given device;
>> in response to the device identity already being on a record, allowing the digital product to be used on the given device;
>> in response to the device identity not being on the record, setting the allowed copy count to a first upper limit for a first time period, the allowed copy count corresponding to a maximum number of devices authorized to use the digital product;
>> calculating a device count corresponding to total number of devices already authorized for use with the digital product; and
>> when the calculated device count is less that the first upper limit, allowing the digital product to be used on the given device.
> **23.** The method of claim **22**, further comprising:
>> in response to the device identity not being on the record, after the first time period has expired, setting the allowed copy count to a second upper limit for a second time period;
>> recalculating the device count; and
>> when the recalculated device count is less than the second upper limit, allowing the digital product to be used on the given device.
> **24.** The method of claim **23**, further comprising:
>> in response to the device identity not being on the record, after the second time period has expired, setting the allowed copy count to a third upper limit;
>> recalculating the device count; and
>> when the recalculated device count is less than the third upper limit, allowing the digital product to be used on the given device.

*Id.* at 13:32–14:23.

Figure 1 of the '960 Patent provides the core features or "rules" of an "example license" to be implemented by the claimed method:

```
┌─────────────────────────────────────────┐
│          Example License Rules           │      ⌐ 60
│  License allows:                         │
│                                          │
│  • 5 devices to be added within the first 5│
│  days of the initial authorization date and│
│  time.                                   │
│                                          │
│  • 7 devices to be added within the first│
│  30 days of the initial authorization date│
│  and time.                               │
│                                          │
│  • 11 devices to be allowed in total.    │
│                                          │
│  • Indefinite numbers of re-authorizations│
│  for devices already authorized.         │
└─────────────────────────────────────────┘
```

*Id.* at Figure 1. The example shows a licensing scheme by which the number of devices that may access the digital content grows over time. The licensing scheme starts on the day of initial authorization of the license and prescribes a first five-day period in which a maximum of five devices are permitted to access the content, a second 25-day period with a new upper limit of seven devices, and a third, indefinite period with another new upper limit of 11 devices. The specification of the '960 Patent explains that the upper limit of devices may rise or fall over time and may be keyed to the date of initial authorization or some other fixed date. *See id.* at col. 6:13:20. The kind of license shown in Figure 1 can be referred to as a "time-adjustable license."

As claims 22–24 show, the claimed invention of the '960 Patent is a system or method for managing and implementing the time-adjustable license using a computer as exemplified in Figure 2. *Id.* at col. 4:42–45 ("FIG. **2** shows an example embodiment of a software system that is designed to manage and implement the rules under a license, such as, for example, the licensing terms **60** described in FIG. **1**.").

# LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, Plaintiffs must plead facts sufficient to allow the Court to draw a reasonable inference that Defendants are liable for the alleged patent infringement. *See id.* (citing *Twombly*, 550 U.S. at 556). At this stage, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the Plaintiffs. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

Eligibility Under 35 U.S.C. § 101

In determining whether a claim is patent-ineligible under *Alice*, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Claims directed to software inventions do not automatically satisfy this first step of the inquiry. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Rather, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

If the Court determines that the claims are directed to an abstract idea, it then determines whether the claims contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2357. An inventive concept is "some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR Holdings, LLC v. Hotels.com,*

*L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).  The Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Alice*, 134 S. Ct. at 2355 (internal quotation omitted).  Even if each claim element, by itself, was known in the art, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350.

## ANALYSIS

### *Alice* Step One

The parties dispute whether the claims are directed to an abstract concept.  Defendants assert that the claims are directed to the general business concept of allowing customers to use multiple copies of a licensed product.  Docket No. 20 at 1.  Defendants further state that the claims do not provide any improvement in computer functionality but instead address a customer-service problem for businesses that license software.  *Id.* at 10.  Defendants further argue that the invention as claimed does not require the use of a computer and that the method claims can be performed by humans.  *Id.* at 7–10.

Plaintiffs deny that the claims are directed to an abstract concept.  Docket No. 26 at 4.  They argue that the claims recite a non-abstract, improved technique for effectively mitigating unauthorized or "pirated" use of software, while also accommodating the typical multiple-device and dynamically-changing use patterns of license customers over time.  *Id.* at 5.  Plaintiffs further argue that the abstract concept proposed by Defendants overlooks the fundamental "adjusting" concept of the patent and therefore should be rejected as untethered from the language and character of the claims as a whole.  *Id.* at 5–6.

"The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish*, 822 F.3d at 1334. "Rather, both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.* In the context of software inventions, the Federal Circuit has instructed that claims directed to improvements in the functioning of a computer are not directed to an abstract idea. *Id.* at 1335. Conversely, claims may be directed to abstract ideas if they are directed to fundamental economic and conventional business practices. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015). Claims may also be directed to abstract ideas if "[t]hey do not claim a particular way of programming or designing the software to [accomplish the claimed functionality], but instead merely claim the resulting systems" or if the claims "are not directed to a specific improvement in the way computers operate." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).

The time-adjustable license is an abstract idea because licensing is a fundamental economic practice and because licenses are abstract exchanges of intangible contractual obligations. *See in re Chorna*, 656 Fed. App'x 1016, 1019 (Fed. Cir. 2016); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014) (internal citations omitted)). Plaintiffs contend that the concept of "adjusting" is present in claim 22 and renders the claim non-abstract. Even accepting Plaintiffs' contention that "adjusting" is present in claim 22, "adjusting" is a feature of the time-adjustable license, not a limitation on that concept. Time-adjustable licenses, although they are a small subset of licenses as a whole, are still abstract. Thus, the claims of the '960 Patent are directed to abstract concepts regardless of whether "adjusting" is present in claim 22.

Further, the claims of the '960 Patent are not directed to specific improvements in the functioning of a computer. Plaintiffs argue that "claims that recite particular implementations for 'providing protection for proprietary digital content' are patent eligible because they 'solve problems faced by digital content providers in the Internet Era and '*improve the functioning of the computer itself*.' " Docket No. 26 at 8–9 (citing *Smartflash LLC v. Apple Inc.*, 2015 WL 661174, at *9 (E.D. Tex. Feb. 13, 2015)). Defendants respond that "the concept of license modifications remains an abstract business concept." Docket No. 29 at 2 (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

Plaintiffs' reliance on *Smartflash* is misplaced because the *Smartflash* court found the claims in that case were directed the abstract concept of "conditioning and controlling access to data based on payment." *Smartflash*, 2015 WL 661174, at *8. It was only at step two of the *Alice* inquiry that the court found the claims eligible, relying on the specific limitations addressing "specific ways of managing access to digital content data based on payment validation through storage and retrieval of use status data and user rules in distinct memory types and evaluating the use data according to the use rules." *Id.* at *9. Although the court wrote the phrase "improve the functioning of the computer itself," it did so in the context of the second step of the *Alice* test and without the benefit of the Federal Circuit's guidance in *Enfish*. Moreover, the Federal Circuit has reversed *Smartflash* and invalidated the claims in that case on § 101 grounds. *Smartflash LLC v. Apple Inc.*, No. 2016-1059, Slip Op. at *2, *14 (Fed. Cir. Mar. 1, 2017). In sum, Plaintiffs' comparison of the instant claims to the claims in *Smartflash* confirms rather than refutes the foregoing analysis.

Because step one of the *Alice* inquiry is satisfied, the Court proceeds to step two.

*Alice* Step Two

At the second step of the *Alice* eligibility inquiry, the Court evaluates "whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Alice*, 124 S. Ct. at 2359. The Court first analyzes the claim elements separately and then as an ordered combination. *Id.* at 2359–60.

Defendants argue that none of the claims of the '960 patent transforms the abstract idea into patent-eligible subject matter. Docket No. 20 at 11 (citing *OIP Techs.*, 788 F.3d at 1363). Defendants characterize the steps of claim 22 as "well-understood, routine, and conventional activities commonly used in the industry." *Id.* (citation omitted). Defendants state, "Claims 1 and 25 recite the same elements as claim 22 that are carried out by generic and conventional computer components, such as a 'communication module,' a 'processor module,' and a 'memory module,' (claim 1) or simply require a 'computer' (claim 25).' *Id.* Defendants assert that the instant claims lack a technical explanation for performing the claimed functions and are therefore patent-ineligible. *Id.* at 11–12 (citing *Internet Patents Corp. v. Active Networks, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015)).

Defendants further argue that "the purported innovation of the '960 patent[,] to impose a maximum limit on the number of authorized devices by setting 'a first upper limit for a first time period' in response to a new device[,]" is "nothing but a generic function of setting values in response to an event." *Id.* at 12 (citing *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed Cir. 2013), *cert. denied* 134 S. Ct. 2871 (2014)). Defendants contend that the individual limitations, such as "digital product" or "sampling physical parameters of the given device," do not provide an inventive concept because they represent field of use restrictions and well-known, routine or conventional activity, respectively. *Id.* at 13–14.

Defendants also argue that the ordered combination does not provide an inventive concept because the combination of the steps adds nothing to what is already present when the steps are considered separately. Defendants further argue that it would be improper to give weight to the ordering of the claimed functions because the specification states that "[t]he accompanying method claims present elements of the various steps in sample order, and are not meant to be limited to the specific order or hierarchy presented." *Id.* at 13 (citing '960 Patent, col 11:36–39).

Plaintiffs respond that "each independent claim recites inventive concepts amounting to significantly more than the alleged abstraction, 'allowing customers to use multiple copies of a licensed product.' " Docket No. 26 at 10. In support of their argument, Plaintiffs again compare the claims to those in *Smartflash* and argue that "[t]he same application of *DDR Holdings* [as in *Smartflash*] applies here because the present claims recite improved solutions to specific computer-related 'problems faced by digital content providers in the Internet Era.' " *Id.* at 12.[3] Plaintiffs also assert that claim 22 recites an ordered combination of process steps that specifically implements a solution designed to prevent unauthorized access to a digital product, while allowing the access to be nearly instantaneous under certain authorized conditions. *Id.* at 13. Plaintiffs also argue that the claims do not preempt the alleged abstract idea, *id.*, and that Defendants "improperly conflate the eligibility requirements of § 101 with the novelty requirement of §§ 102 and 103" by limiting its analysis to whether individual claim elements were known in the art. *Id.* at 14. Finally, Plaintiffs state that inventive concepts can be found in inventive combinations of elements in any given process step as well as in the ordered

---

[3]As stated above, the Federal Circuit has found that the patent claims asserted in *Smartflash* recite patent-ineligible subject matter under § 101. *Smartflash*, No. 2016-1059, Slip Op. at *2, *14.

combination of steps making up the overall method. *Id.* at 14–15 (citing *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)).

Claim 22 is representative of claims 1 and 25 for purposes of this analysis because the three independent claims recite almost identical limitations modified only to fit the claimed "system" (claim 1), "method" (claim 22) or "computer program product" (claim 25). For example, the first step of claim 22 is "receiving a request for authorization to use the digital product on a given device," and claims 1 and 25 have the limitations "a communication module for receiving a request for authorization to use the digital product from a given device" and "code for causing a computer to receive a request for authorization to use the digital product," respectively. Moreover, the computer-related elements of claims 1 and 25 are generic (e.g. "a processor module" in claim 1 or "a non-transitory computer-readable medium" in claim 25) and do not contribute to any inventive concept in the claims.

Although Defendants are correct that claim 22 is representative, the Court is not persuaded that claim 22's alleged failure to recite a mechanism for each of the claimed functions is fatal under 35 U.S.C. § 101. *See* Docket No. 20 at 12 (citing *Internet Patents Corp.*, 790 F.3d at 1348). The instant claims do not fail to recite a mechanism like the claims in *Internet Patents Corp.* The steps recited in claim 22 of the '960 Patent explain how to implement the concept of a time-adjustable license; the *Internet Patents* claim listed its object—maintaining a certain state—as one of many claim limitations and did not explain how the "maintaining" was accomplished. *See* 790 F.3d at 1348. Accordingly, to satisfy step two of the *Alice* inquiry, the Court must analyze the limitations of claim 22 of the '960 Patent to determine whether they sufficiently limit the abstract concept of time-adjustable licenses.

The preamble of claim 22 does not provide an inventive concept. The phrase "for adjusting a license for a digital product over time" is a statement of purpose indicating that the steps following the phrase would accomplish the "adjusting."[4] The next clause, providing that "the license compris[es] at least one allowed copy count corresponding to a maximum number of devices authorized for use with the digital product," assumes that a time-adjustable license is in place. The preamble does not require entering into the license as a step of the method. Because the time-adjustable license is the abstract concept to be limited by the remaining limitations, the preamble does not limit, but rather announces, the abstract concept.

The first step of claim 22, "receiving a request for authorization to use the digital product on a given device," does not meaningfully limit the abstract idea of the time-adjustable license. In the context of computer software, "receiving a request" is routine and generic method of accessing a desired digital product. Moreover, the combination of sub-elements—a "digital product" and a "given device"—is also not meaningfully limiting because the combination merely limits the field of use of the invention to digital products.

The second step is "verifying that a license data associated with the digital product is valid based at least in part on a device identity generated by sampling physical parameters of the given device." Verifying the validity of the license does not meaningfully limit the implementation of a time-adjustable license; rather, it asks only whether there is a valid license before the method determines how many devices may access the content under that license. Nor does the "device identity" sub-element provide an inventive concept because using a device identity generated in part by sampling the physical characteristics of a device was well-known at the time the '960 Patent was filed. *See* Docket No. 20 at 14 (citations omitted). Plaintiffs'

---

[4] As explained above, the "adjusting" is part of the abstract concept. Accordingly, it would not be more favorable to Plaintiff to construe "adjusting" as a limitation for the purposes of this motion.

response does not dispute that such device identities were well-known; instead, Plaintiffs assert that asking whether particular claim elements are within the prior art conflates the eligibility inquiry with the novelty inquiry of §§ 102 and 103. The Court will address this argument below.

The third step of the method depends on whether the device identity is already "on a record." If it is, the third step is "allowing the digital product to be used on the given device." This first option is routine. If the device is recognized as one which is approved for access (this step) pursuant to a valid license (previous step), then access is granted. Moreover, the sub-elements are all generic; "digital product" and "given device" have already been addressed, and "a record" is a generic record. Nor does the combination of a "digital product," a "device" and a "record" contain an inventive concept.

Allowing the digital product to be used "in response to the device identity already being on a record" is the last step of the method in embodiments in which the device is recognized. In other embodiments of the method, the device identity is not "on the record," and claim 22 prescribes three additional steps that culminate in allowing the digital product to be used on the given device. These steps also fail to provide an inventive concept.

The first additional step, "setting the allowed copy count to a first upper limit for a first time period, the allowed copy count corresponding to a maximum number of devices authorized to use the digital product," contains no inventive concept. "Setting the allowed copy count to a first upper limit for a first time period" does not provide a meaningful limitation on the concept of time-adjustable licenses because a time-adjustable license, which by definition has more than one copy count in more than one time period, necessarily has a "first upper limit for a first time period." The remainder of the limitation defines "allowed copy count" as "a maximum number of devices authorized to use the digital product." The allowed copy count is a feature of the

time-adjustable license and its definition describes, but does not limit, the abstract concept. *See* '960 Patent, col. 13:33–35 (explaining that "the license compris[es] at least one allowed copy count . . . .").

The second additional step, "calculating a device count corresponding to total number of devices already authorized for use with the digital product," does not contain an inventive concept. Like the first additional step, most of its language is definitional, providing that "device count" means the "total number of devices already authorized for use with the digital product." The remainder, "calculating a device count," is an information-gathering step, which does not provide an inventive concept. *See Elec. Power Group LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016).

The third additional step, "when the calculated device count is less than the first upper limit, allowing the digital product to be used on the given device," also lacks an inventive concept for the same reasons as allowing the digital product to be used "in response to the device identity already being on a record." Allowing the marginal authorization when fewer than the maximum allowable number of devices are authorized is not inventive.

The entirety of the method as a combination of steps[5] does not contain an inventive concept. The method can be summarized as: receiving an access request for a licensed digital product, verifying the license, checking to see if the device is authorized and then either granting access if the device is already authorized or, if not, granting access after ensuring that the number of presently authorized devices is less than the number that is permitted to be authorized. This amounts to no more than instructions to implement the time-adjustable license on a computer and

---

[5] The specification of the '960 Patent states, "The accompanying method claims present elements of the various steps in sample order, and are not meant to be limited to the specific order or hierarchy presented." '960 Patent, col. 11:36–39. Any inventive concept must therefore be found in the combination of steps, but not in their order.

cannot rescue the patent eligibility of claims 1, 22 or 25. In sum, the independent claims of the '960 Patent are drawn to patent-ineligible subject matter.

Dependent Claims

Having concluded that the independent claims of the '960 Patent are drawn to ineligible subject matter, the Court now analyzes the dependent claims. There are twenty-two dependent claims in the '960 Patent, of which twenty (claims 2–21) depend from claim 1 and recite systems, and two (claims 23–24) depend from claim 22 and recite methods.

Defendants argue that "[n]one of the dependent claims add anything of 'practical significance to the underlying abstract idea' that would otherwise salvage the patentability of those claims." Docket No. 20 at 15 (citing *Ultramercial*, 772 F.3d at 716). Specifically, Defendants argue that dependent claim 2 is not inventive because limiting the digital product to software only specifies the nature of the licensed product. *Id.* (citation omitted). Defendants assert that claim 3 adds nothing inventive to the "verify" step of claim 1 because it merely defines license data as "information that may be used to verify whether the license for the digital product is valid." *Id.* (citation omitted). With respect to claim 4, Defendants state that a database is a well-known generic structure for storing information. *Id.* (citation omitted). Defendants state that "claims 5, 6, 10, 11 and 15 define a time period as a number of days and recite specific number of days for the time periods. Dependent claims 9, 14, 23 and 24 recite repeating the functions of setting a limit and calculating a device count in independent claim 1 after expiration of a time period." *Id.* at 15–16. Defendants argue that "claims 7, 12, and 16 recite the function of sending a warning when a limit has been reached (a well-known generic business practice) by sending messages (a generic function of computers)." *Id.* at 16 (citation omitted). Defendants further argue that "[d]ependent claims 8, 13, and 17 recite denying access

when a limit has been exceeded, another well-known generic business practice . . . ." *Id.* Finally, Defendants state that "claims 18–21 also limit the device identity to a unique identity based on user-configurable and non-user configurable parameters of the device, and a cryptographic hash of those parameters." *Id.* Defendants argue those claims do not contain an inventive concept because the claimed identification techniques were known long before the filing of the '960 Patent. *Id.*

Plaintiffs respond that the dependent claims recite additional claim-specific inventive concepts. Docket No. 26 at 15. Plaintiffs assert that Defendants' approach to the dependent claims is insufficient. *Id.* at 15–16. Plaintiffs specifically characterize Defendants' approach to claims 9, 14, 23 and 24 as "internally consistent." *Id.* at 16. Plaintiffs argue that "while Claim 1 requires executable code to 'verify that a license data' *itself* is valid, Claim 3 further defines and meaningfully limits the 'license data' as further comprising 'information' that may be used to separately 'verify whether the *license*' is valid." *Id.* (emphasis in original). Plaintiffs argue that Defendants' allegations that claim 7–8, 12–13 and 16–17 recite nothing more than "well-known generic business practice" are unsupported by evidence and improperly conflate the § 101 and § 103 inquiries. *Id.* Plaintiffs also argue that Defendants' arguments with respect to Claims 18–21 improperly conflate the § 101 and § 103 inquiries. *Id.* at 17. Finally, Plaintiffs state, "The only expressed challenge to dependent Claims 5, 6, 10, 11, and 15 is that they allegedly 'define a time period as a number of days and recite specific numbers of days for the time periods.' Clearly, more is required to overcome the presumption of eligibility by clear and convincing evidence." *Id.*

As a preliminary matter, Plaintiffs are incorrect that Defendants' Motion conflates the § 101 eligibility inquiry with the § 103 obviousness inquiry. Plaintiffs are correct that merely

finding a claim element within the prior art does not, by itself, dispose of the § 101 inquiry, and a determination that a claim is drawn to ineligible subject matter should not turn only on the finding that one or more claim elements are within the prior art. However, the "pragmatic analysis of § 101 is facilitated by considerations analogous to those of §§ 102 and 103 as applied to the particular case." *Internet Patents*, 790 F.3d at 1347. "Courts have found guidance in deciding whether the allegedly abstract idea (or other excluded category) is indeed known, conventional, and routine, or contains an inventive concept, by drawing on the rules of patentability." *Id.* A § 101 inquiry properly relies on intrinsic evidence concerning the prior art in the context of determining whether a claim element is known (i.e., so well-known as to be conventional), conventional, routine, or contains an inventive concept.[6] Although the § 101 and § 103 inquiries may rely on similar tools (i.e., references showing claim elements within the prior art), they are distinct and are treated as such herein.

The § 101 inquiry here demonstrates that the dependent claims of the '960 Patent do not contain inventive concepts.

With respect to claims 2 and 4,[7] Defendants are correct that neither limiting the digital product to "software" nor limiting the record to "an authorization database" adds an inventive concept to the claims because they are generic digital products and records, respectively. Accordingly, claims 2 and 4 are drawn to ineligible subject matter.

Claim 3 adds to claim 1 the requirement that "the license data comprises information that may be used to verify whether the license for the digital product is valid." For purposes of this motion, the Court adopts Plaintiffs' construction of claim 3 under which "verify[ing] that a

---

[6] The court may consider, on motions to dismiss, matters of public record appropriate for judicial notice. *See Integrated Technological Sys., Inc. v. First Internet Bank of Indiana*, 2017 WL 631195, at *2 (E.D. Tex. Jan 30, 2017).

[7] Plaintiffs make no particularized arguments with respect to claims 2 or 4.

license data" is valid is a separate step from "verify[ing] whether the license" is valid. In any event, the license data is not an element of the system of claim 1; rather, claim 1 assumes the license data is present, and the claimed system must only verify its validity. In Plaintiffs' view, the claimed system need not verify that the license itself is valid because this is a separate step from verifying that a license data is valid. Claim 3 limits the "license data" to data that comprises enough or the kind of data that might be used to verify the validity of the license. This is not inventive because it merely states what kind of data is used in the validation process whether or not that process includes an extra step. Accordingly, claim 3 is drawn to ineligible subject matter.

Claims 5, 6, 10, 11 and 15 are directed to defining a number of days for the first, second and third time periods. These claims limit the abstract concept of a time-adjustable license to a subset of abstract concepts (i.e., only licenses having particular features or characteristics) rather than limiting the methods or systems for implementing those licenses. Accordingly, claims 5, 6, 10, 11 and 15 do not add inventive concepts, and they are all drawn to ineligible subject matter.

Claims 7, 12 and 16 are directed to warning a user when the calculated device count is equal to the upper limit. Specifically, the claims require that the warning be sent to the device being used to access the digital product. In cases in which the involvement of a computer is otherwise too limited to rescue the eligibility of the claims, the claims are not rescued by the addition of a limitation that the computer sends information over a network. *buySAFE*, 765 F.3d at 1355 (discussing *Alice* and also citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011)). Relaying information a computer generates to another device or user is a generic function of computers. *See id.* Accordingly, claims 7, 12 and 16 are also drawn to ineligible subject matter.

Claims 8, 13 and 17 are all directed to denying authorization when the calculated device count exceeds the upper limit of the copy count. Denying authorization when the calculated device count exceeds the upper limit of the copy count is the logical alternative to granting authorization when the device count is less than the upper limit. This does not meaningfully limit the concept of the time-adjustable license because denying access to devices that exceed the currently-enforced limit is a generic way of implementing such a limit, which is itself a feature of the abstract time-adjustable license. In other words, the additional limitations recited in claims 8, 13 and 17 still do no more than instruct the reader to implement the time-adjustable license on a computer. These claims are also drawn to patent-ineligible subject matter.

Claims 9, 14, 23 and 24 are drawn to establishing second and third upper limits on the copy count for second and third periods, respectively. As discussed above, these limitations describe the license to be implemented rather than a system to implement a license. Because the additional limitations do not add more than instructions to implement the time-adjustable license on a computer, claims 9, 14, 23 and 24 are also drawn to ineligible subject matter.

Finally, claims 18–21 modify the "device identity" limitation of claim 1. Claim 18 requires that "the device identity comprises unique device identifying information." The specification of the '960 Patent states that "unique device identifying information may comprise at least one user-configurable parameter and/or at least one non-user-configurable parameters of the given device." '960 Patent, col. 9:22–24. Claims 19–21 depend from claim 18. Claim 19 further requires that the "unique device identifying information comprises at least one user-configurable parameter and at least one non-user-configurable parameter of the device." Claim 20 requires that the "device identity is generated by utilizing at least one irreversible transformation of the at least one user-configurable and the at least one non-user-configurable

parameters of the given device."  Finally, claim 21 requires that "the device identity is generated by utilizing a cryptographic hash function on the at least one user-configurable and the at least one non-user-configurable parameters of the given device."  Defendants provide evidence in the form of United States patents, one of which is incorporated by reference in its entirety into the specification of the '960 Patent, that the claimed techniques for generating a unique device identity were well-known in the art by the priority date of the '960 Patent.[8]  The Court finds that the claimed techniques for generating a device identity were routine and conventional in the industry at the time of patenting.  Thus, the use of the claimed techniques to generate device identities is not inventive, nor is the combination of these techniques with the remaining limitations of claim 1.  Accordingly, claims 18–21 are also drawn to ineligible subject matter.

In sum, the claims of the '960 Patent instruct the person of ordinary skill to implement the time-adjustable license using a computer.  "Stating an abstract idea while adding the words 'apply it with a computer' " is "not enough for patent eligibility."  *Alice*, 134 S. Ct. at 2358 (internal quotation omitted). Accordingly, the claims of the '960 Patent are directed to patent-ineligible subject matter.

## CONCLUSION

For the reasons listed above, the Court finds that all claims of the '960 Patent are drawn to ineligible subject matter under 35 U.S.C. § 101.  Accordingly, it is

**ORDERED** that Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for Lack of Patentable Subject Matter Under 35 U.S.C. § 101 are hereby **GRANTED**;[9] and

---

[8] Because the patents Defendants provide are incorporated by reference into the specification of the '960 Patent, the Court finds them sufficiently part of the intrinsic record to be considered on this Motion to Dismiss.  *See supra*, n.6.

[9] Case No. 2:16-cv-570, Docket No. 20; Case No. 2:16-cv-571, Docket No. 14; Case No. 2:16-cv-572, Docket No. 16; Case No. 2:16-cv-573, Docket No. 14; Case. No. 2:16-cv-574, Docket No. 15 (GRANTED-IN-PART and DENIED-IN-PART as described above).

**ORDERED** that all claims asserted by Plaintiffs in Case Nos. 2:16-cv-570, 2:16-cv-571,

2:16-cv-572, 2:16-cv-573 and 2:16-cv-574 are hereby **DISMISSED WITH PREJUDICE**.

**SIGNED this 20th day of March, 2017.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE